# MORGAN ENVELOPE COMPANY *v.* ALBANY PER-FORATED WRAPPING PAPER COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

No. 254.   Argued March 8, 9, 1894. — Decided March 8, 9, 1894.

An inventor who acquiesces in the rejection by the Patent Office of his claim in one form, and accepts a patent with the claim changed so as to correspond with the views of that office, is estopped to claim the benefit of the rejected claim.

Letters patent No. 325,410, granted to Oliver H. Hicks September 1, 1885, for a package of toilet paper known as the oval roll or oval king package, is void for want of patentable invention.

Letters patent No. 325,174, issued to said Hicks August 25, 1885, for a toilet-paper fixture, and letters patent No. 357,993, issued to said Hicks February 15, 1887, for an apparatus for holding toilet paper, are not infringed by selling such fixture or apparatus, bought of the patentee, with paper manufactured by the seller.

When a patentee has once received his royalty, he cannot treat the subsequent seller or user as an infringer.

This was a bill in equity to recover damages for the infringement of three letters patent issued to Oliver H. Hicks of Chicago, and assigned to the appellant, viz.: Patent No. 325,410,

issued September 1, 1885, for a "package of toilet paper," known as the "Oval Roll" or "Oval King" package. (2) Patent No. 325,174, issued August 25, 1885, for a "toilet-paper fixture." (3) Patent No. 357,993, issued February 15, 1887, for an "apparatus for holding toilet paper." These are known as the "Oval King" fixtures.

The answer made the usual denials of novelty and infringement.

Upon a hearing upon pleadings and proofs, the court dismissed the bill, except as to the fifth claim of patent No. 357,993, upon which a decree was ordered for plaintiff without costs. From this decree plaintiff appealed to this court.

*Mr. Melville Church* and *Mr. Charles E. Mitchell*, (with whom was *Mr. J. B. Church* on the brief,) for appellant.

*Mr. Esek Cowen* for appellee.

Mr. Justice Brown delivered the opinion of the court.

Prior to the inventions covered by the patents in this case, toilet paper had been put up in packages of sheets cut to a convenient size, sometimes attached together by a wire, or in cylindrical rolls of continuous length, either perforated transversely at proper intervals for the convenient detachment. of the sheets, or in similar rolls not perforated, but designed to be cut by a device having a sharp edge, to which the rolls were attached. All these methods proved to be objectionable on account of the temptation offered to greed or wastefulness, in the facility with which unnecessary amounts of paper could be detached, which were either carried off or allowed to fall on the floor. Where perforated paper was employed in roll form, the litter was increased by the dropping of small particles of paper intended to have been removed by the perforating machine, but which remained attached until the paper was unwound, when they fell upon the floor and became very difficult to remove.

(1) In the specification of his patent No. 325,410, which is for a package of toilet paper, the patentee states that he had in view to furnish a toilet paper in the form which would prevent in a large measure this vast amount of wastage. "In carrying out this object I have put up one or more lengths of paper in the form of a continuous band (as contra-distinguished from a roll) of oblong or oval shape, the short rounded ends of the bundle thus produced serving as guides for determining the proper points at which the paper has to be separated in order to produce sheets of a size desirable for use, and affording also the most advantageous surfaces upon which to tear the paper. The band I make of a thickness calculated to produce sheets severed at the point stated of practical and economical lengths from the time the bundle is opened until it is consumed."

The band he makes of an oblong or oval shape so that it may be mounted in a fixture shown in a previous patent for that purpose, or used detached from the fixture, one hand of the user being slipped into the interior, and the other hand being employed to grasp the pendant end of the paper, and by drawing the paper tightly over one of the short rounded ends of the bundle, causing it to separate at that point and produce a sheet of convenient length. His claim was for "a bundle of paper consisting of one or more lengths formed into a continuous band whose internal diameter is greater than the thickness of the paper, substantially as described." The invention in question, as described in the specification and illustrated in the drawings annexed to the patent, is for a band of paper rolled in an oval instead of the usual cylindrical shape, with a view of affording a convenient method of tearing off sheets of a proper size, the fracture in each case being at the end of the roll. It is difficult to see, however, how any waste is thereby prevented, since it is nearly, if not quite as easy, to unwind long strips of this paper from an oblong as from a cylindrical roll. So, too, if the patent were construed as for an oblong roll, the fact that from time immemorial, cotton and woollen goods and silks have been almost universally wound about a flat board or core, precisely as described in the patent, would indicate that there is no novelty in the oblong or oval shape,

and that the patent, if supported at all, must be for the different purpose for which toilet paper is wound in this form.

Upon examining·the claim, however, in connection with the original application, it appears that, if the patent involved any invention at all, it is not limited to bands of oval or oblong shape, since the claim contained in the original application was for "a bundle of toilet paper consisting of one or·more lengths of paper formed into a flexible continuous band of oblong or oval shape, the short rounded ends of such band serving as guides for determining the proper points at which the paper is to be separated in order· to produce sheets of a size desirable for use, and affording, also, the most advantageous surfaces upon which to tear the paper, substantially as described." This claim, which corresponds with the specification and drawings, and was Hicks' real invention, was rejected as indefinite, because it failed to point out any construction over an ordinary paper roll, and was also rejected upon a prior patent to one Peacock. The patentee thereupon amended his application by changing his claim to "a bundle of paper consisting of one or more lengths formed into a continuous band whose internal diameter" (by which we understand the internal diameter, when rolled into a cylindrical form) "is greater than the thickness of the paper, substantially as described."

If this claim be good, it would seem to follow that any band of paper wound in such manner that the internal diameter is greater than the thickness of the paper, would be an infringement, whatever be its shape, or for whatever purpose used. The size of the roll, too, is not made material, except that it must bear a certain relation to its inner diameter. Certainly it would apply to all toilet paper, even if wound in a cylindrical form, as the language of the claim, though not of the specification, indicates that it should be. It would also follow that, even if the roll of paper, when purchased, had an internal diameter less than the thickness of the paper, such internal diameter would become relatively greater with the progressive using of the paper, until its thickness was so far reduced as to become less than the internal diameter, when it would fall within the description of the claim. Indeed, it is difficult to

see what function is performed by a band of paper so constructed, or what difference it makes whether the internal diameter is greater or less than the thickness of the paper, unless the paper be made in an oval form.

It is insisted in this connection, however, that under the words "substantially as described" the patentee is entitled to claim a band of oval or oblong shape, and that, looking at his specification and drawing in connection with the claim, it is obvious that the latter should be so limited. But the patentee having once presented his claim in that form, and the Patent Office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim or such a construction of his present claim as would be equivalent thereto. *Leggett* v. *Avery*, 101 U. S. 256; *Shepard* v. *Carrigan*, 116 U. S. 593; *Crawford* v. *Heysinger*, 123 U. S. 589, 606; *Union Metallic Cartridge Co.* v. *United States Cartridge Co.*, 112 U. S. 624.

It is true that these were cases where the original claim was broader than the one allowed, but the principle is the same if the rejected claim be narrower. Why the claim of the present patent was allowed after the rejection of the narrower claim does not appear. The objections made to the claim as originally presented seem to be equally applicable to this.

But construing this claim as for an oval or oblong roll, it is clearly anticipated by the patent granted March 6, 1883, to one Peacock, for a toilet-paper case, used for carrying toilet paper, which was wound in an oval form about a spool or core, precisely as described in plaintiff's patent. Apparently it differs from the Hicks roll only in being smaller and having its core hinged to a stiff case, in which the paper for convenience was carried.

There was also put in evidence by the defendant a device known as the Wheeler Pocket Companion, which was a small package of toilet paper of an oval form, differing from those covered by the Hicks patent only in size, and in the fact that no attention was paid to the relation of the inner to the outer convolutions, and no intent shown that when one convolution

was torn off the end of the next one would drop down into position to be grasped. While neither of these devices is a precise anticipation of the Hicks patent in the manner in which they are used, it is impossible to say that a mere enlargement of these devices to the size contemplated by Hicks would constitute invention, although by such enlargement the roll became capable of being used in a somewhat different manner.

(2) Patents No. 325,174 and No. 357,993 are practically the same, and are for a combination of the paper roll described in the former patent, with a mechanism for the delivery of the paper to the user in an economical manner. The object of both inventions is said to be " to so arrange the paper as to prevent more than a given quantity of it to be withdrawn from the roll at a single operation, and so that in the act of withdrawing such given quantity it shall be automatically severed from the roll, leaving pendent from the roll a free end, which shall serve as a means of withdrawing a like quantity by the next user." This is accomplished by the combination of an oscillating roll of toilet paper actuated in one direction by a pull upon its free end, of a knife or cutter coöperating with the roll to sever the unwound portion when the roll has reached the limit of its motion in one direction, and a stop for so limiting the motion of the roll. The principal difference between the two patents is that No. 325,174 is limited to an appliance in which a knife or cutter for arresting the roll of paper, when oscillated, is employed; while the latter one, No. 357,993, is broad enough in its scope to include a structure in which a mere stop, which has no cutting action at all, is employed to arrest the roll.

Each patent contains five claims, and in all of them, except the fourth and fifth of the first patent and the fifth of the second, the paper roll is included as an element of the combination.

No question is made but that the mechanism of these patents, by which the paper is served out to the user, involves a patentable novelty; but it is claimed, first, that the roll of paper being perishable, and the machine being constructed for

the purpose of delivering this paper to users in convenient lengths, such a roll is not a proper part of the combination; second, that conceding it to be a part of the combination, there was no infringement.

The first defence raises the question whether, when a machine is designed to manufacture, distribute, or serve out to users a certain article, the article so dealt with can be said to be a part of the combination of which the machine itself is another part. If this be so, then it would seem to follow that the log which is sawn in the mill; the wheat which is ground by the rollers; the pin which is produced by the patented machine; the paper which is folded and delivered by the printing press, may be claimed as an element of a combination of which the mechanism doing the work is another element. The motion of the hand necessary to turn the roll and withdraw the paper is analogous to the motive power which operates the machinery in the other instances

But without expressing an opinion upon this point, we think the facts of this case fail to sustain the charge of infringement. Defendants neither made, sold, nor used the mechanism invented by Hicks to serve out the toilet paper, except as they purchased it of the patentee, and the only acts proven against them were in selling oval rolls of paper of their own manufacture, with fixtures manufactured and sold by the plaintiff, in combination with its (the plaintiff's) paper to persons other than the defendants, the fixtures having been obtained by defendants from the original purchasers of the patented combination; and also of selling oval rolls of paper of defendant's own manufacture to persons who had previously purchased fixtures and paper from the plaintiff, with the knowledge and intention that the paper so sold was to be used in connection with the plaintiff's fixtures. In this connection it appeared that it had not been the practice of the plaintiff to sell its fixtures independently of its paper, and that they sold only to such parties as dealt in and used their paper. Purchasers were also required to buy a given quantity of paper to a given number of fixtures, to be sold only in connection with the paper, the rule being not to sell more than

one fixture to one case of paper. The fixtures were also sold to hotels and other public buildings, with the understanding that their paper would be subsequently purchased of the plaintiff company. It appears to have been its invariable rule to refuse to sell fixtures except to persons also ordering paper.

So far as fixtures sold by defendants, which had been originally manufactured and sold by the patentee to other parties, are concerned, it is evident that, by such original sale by the patentee, they passed out of the limits of the monopoly, and might be used or sold by any one who had purchased them from the original vendees. The patentee having once received his royalty upon such device, he cannot treat the subsequent seller or user as an infringer. *Bloomer* v. *McQuewan*, 14 How. 539. As was said by Mr. Justice Clifford in *Chaffee* v. *Boston Belting Company*, 22 How. 217, 223 : " When the patented machine rightfully passes to the hands of the purchaser from the patentee, or from any other person authorized to convey it, the machine is no longer within the limits of the monopoly. . . . . By a valid sale and purchase, the patented machine becomes the private individual property of the purchaser, and is no longer protected by the laws of the United States, but by the laws of the State in which it is situated." See also *Bloomer* v. *Millinger*, 1 Wall. 340 ; *The Paper Bag Cases*, 105 U. S. 766, 771. In this latter case one Morgan had purchased a machine for making paper bags of the patentee, and it was held that, having the absolute ownership of the machine, he had the right either to use it during the existence of the letters-patent, or to transfer such ownership and right to another. It was said that " the power to sell the machine and transfer the accompanying right of use is an incident of unrestricted ownership." *Birdsell* v. *Shaliol*, 112 U. S. 485 ; *Woodworth* v. *Curtis*, 2 Woodb. & Min. 524 ; *Goodyear* v. *Beverly Rubber Co.*, 1 Cliff. 348.

The real question in this case is, whether, conceding the combination of the oval roll with the fixture to be a valid combination, the sale of one element of such combination,

with the intent that it shall be used with the other element, is an infringement. We are of opinion that it is not. There are doubtless many cases to the effect that the manufacture and sale of a single element of a combination, with intent that it shall be united to the other elements, and so complete the combination, is an infringement. *Saxe* v. *Hammond,* Holmes, 456; *Wallace* v. *Holmes,* 9 Blatchford, 65; *Barnes* v. *Straus,* 9 Blatchford, 553; *Schneider* v. *Pountney,* 21 Fed. Rep. 399. But we think these cases have no application to one where the element made by the alleged infringer is an article of manufacture perishable in its nature, which it is the object of the mechanism to deliver, and which must be renewed periodically, whenever the device is put to use. Of course, if the product itself is the subject of a valid patent, it would be an infringement of that patent to purchase such product of another than the patentee; but if the product be unpatentable, it is giving to the patentee of the machine the benefit of a patent upon the product, by requiring such product to be bought of him. To repeat an illustration already put: If a log were an element of a patentable mechanism for sawing such log, it would, upon the construction claimed by the plaintiff, require the purchaser of the sawing device to buy his logs of the patentee of the mechanism, or subject himself to a charge of infringement. This exhibits not only the impossibility of this construction of the patent, but the difficulty of treating the paper as an element of the combination at all. In this view the distinction between repair and reconstruction becomes of no value, since the renewal of the paper is in a proper sense neither the one nor the other.

The case of the *Cotton-Tie Company* v. *Simmons,* 106 U. S. 89, 93, presents no difficulty whatever. In that case the owner of a patent for a metallic cotton bale tie, each tie consisting of a buckle and band, granted no licenses to manufacture the ties, but supplied the market with them, and stamped upon the metal of each buckle the words, "Licensed to use once only." After the bands had been once used and severed, defendants, who had bought the bands and the buckles as scrap iron, rolled and straightened the pieces of the bands, and rivetted together

their ends. They then cut them into proper lengths, and sold them with the buckles, to be used as ties, nothing having been done to the buckles. It was held that they thereby infringed the patent. The gist of the decision is that the use of a tie once, and its subsequent severance, were intended to operate as a destruction of it, and that the defendants had no right to put the same parts together for use a second time. Says Mr. Justice Blatchford : "Whatever rights the defendants could acquire to the use of the old buckle, they acquired no right to combine it with a substantially new band to make a cotton-bale tie. They so combined it when they combined it with a band made of the pieces of the old band in the way described. What the defendants did in piecing together the pieces of the old band was not a repair of the band or tie in any proper sense. The band was voluntarily severed by the consumer at the cotton-mill, because the tie had performed its function of confining the bale of cotton in its transit from the plantation or the press to the mill. Its capacity for use as a tie was voluntarily destroyed."

It is evident that the use of the tie was intended to be as complete a destruction of it as would be the explosion of a patented torpedo. In either case, the repair of the band or the refilling of the shell would be a practical reconstruction of the device. In this case, however, the purchaser of the new roll does precisely what the patentee intended he should do : he replaces that which is in its nature perishable, and without the replacement of which the remainder of the device is of no value. The replacement is of a product which it is the object of the mechanism to deliver. The case is more nearly analogous to that of *Wilson* v. *Simpson*, 9 How. 109, in which the invention involved was a planing machine, and the patent sued upon covered the combination with the cutting knives or planes of a pressure roller to effect the planing of the planks. It was proved that one of the machines would last in use for several years, but that its cutting knives would wear out, and must be replaced at least every sixty or ninety days. It was said by Mr. Justice Wayne, (p. 125,) that "the right to replace them was a part of the invention transferred to the assignee for the

time he bought it, without which his purchase would be useless to him, except for sixty or ninety days after a machine had been put in use. It has not been contended, nor can it be, that such can be a limitation of the assignee's right in the use of the invention. . . . If, then, the use of the machine depends upon the replacement of the knives, . . . frequently replacing them, according to the intention of the inventor, is not a reconstruction of the invention, but the use only of so much of it as is absolutely necessary to identify the machine with what it was in the beginning of its use, or before that part of it had been worn out. The right of the assignee to replace the cutter knives is not because they are perishable materials, but because the inventor of the machine has so arranged them as a part of his combination, that the machine could not be continued in use without a succession of knives at short intervals. Unless they were replaced, the invention would have been of little use to the inventor or to others."

The true distinction is stated by Mr. Justice Clifford in *Aiken* v. *Manchester Print Works*, 2 Cliff. 435, where the invention was of a knitting-machine, with which the vendor was accustomed to send a package of the needles used in the machine, which needles were the subject of a separate patent. It was held that the purchase of the knitting-machine, and the needles accompanying the same, did not confer upon the purchaser any right, after the needles were worn out and became useless, to manufacture other needles, and use the same in the knitting-machine so sold and purchased. The case of *Wilson* v. *Simpson* was distinguished from this in the fact that the cutters and knives in that case were not subject to a patent, and of course the respondent had a right to use them as materials to repair his machine; " but," says the court, " unfortunately for the defendants in this case, the needle is subject to a patent, and in making and using it they have infringed the right of the plaintiff." As we have already held that the paper roll in this case was not the subject of a valid patent, it follows that the defendants cannot be held as infringers for the manufacture and sale of such roll.

Considerable stress is laid by plaintiff upon the fact that Mr.

Wheeler, president of the defendant corporation, in February, 1885, and before the first patent was issued, bought one of the plaintiff's fixtures, known as the Oval King fixture, together with some of its paper, and despatched them to England with instructions to his agents to file an application for a patent there, which patent was subsequently issued. That, before a patent was issued, Hicks himself applied for protection in England, and learning of the filing of the application there by Wheeler, filed a protest against the issuance of a patent to the latter, who thereupon to thwart his obtaining a patent, made an affidavit that he did not obtain the knowledge of the invention from Hicks or any other person, but by seeing it in public use in the United States. Wheeler's own testimony in this case indicates that this affidavit contained a *suppressio veri* if not a *suggestio falsi*. But, however reprehensible his conduct may have been in this connection, it does not affect the issue between the parties here. It does not show that the Hicks patent upon the roll is a valid patent, or that the conduct of the defendants in making and selling such roll is an infringement upon the combination patents.

The decree of the court below is, therefore,

*Affirmed.*

MR. JUSTICE WHITE, not having been a member of the court when this case was argued, took no part in its decision.