LEPPER et al. v. RANDALL.

(Circuit Court, E. D. Pennsylvania. January 31, 1901.)

1. PATENTS—HAM-BOILING WRAPPERS.

Letters patent No. 624,839, for an improvement in ham-boiling wrappers, because of the prior state of the art, is limited to the specific device whereby, the corners of the wrapper being folded back, a lacing cord is tightly engaged with the hooks, so as to envelop the ham completely, and form a sack.

2. SAME—INFRINGEMENT.

Letters patent No. 624,839, for an improvement in ham-boiling wrappers, is not infringed by a wrapper identical with the patented article, except that the fastenings are straps and buckles instead of a lacing cord, engaged with hooks, studs, or eyelets.

E. Hayward Fairbanks, for complainants.
William Morris, for respondent.

J. B. McPHERSON, District Judge. The complainants are the owners of letters patent No. 624,839, issued May 9, 1899, for an "improvement in ham-boiling wrappers." The specifications describe the invention as follows:

"Our invention consists of a wrapper for boiling a ham therein, more particularly a boneless ham, the same being formed of a piece of canvas or other suitable fabric adapted to envelop a ham, and means for tightly compressing the wrapper thereon and preventing opening thereof, whereby the ham is guarded against disintegration, and its juices are retained within the wrapper; thus producing superior results in the flavor, compactness, and appearance of the ham."

The drawings show a wrapper upon which are fastened four rows of hooks, arranged at right angles, so as to form a quadrilateral

figure within the ends of the wrapper. The arrangement of the hooks is thus described:

"It will be noticed that the rows of hooks are in parallel series or pairs, and the members of one pair extend at right angles to those of the other pair, and the several rows extend at an angle to the sides of the mat between the corners of the latter and the center thereof, said corners thus being free to be folded back along the lines of the hooks towards the center of the mat, overlapping each other, and adapted to be drawn closely together over a ham, as will be hereinafter more fully explained."

The corners being folded back, a lacing cord is tightly engaged with the hooks, so as to envelop the ham completely and form a sack, the joints of which are thus "comparatively hermetically sealed"; this phrase meaning no more than that the wrapper is tightly fastened around the ham. Instead of hooks, either studs or eyelets are also named by the patentees as an alternative device for engaging the cord. The claims of the patent are as follows:

"(1) A wrapper of the character named, consisting of a piece of fabric and devices within the ends thereof for engagement of a closing and tightening lacing cord, said devices being arranged in series at an angle to each other and each at an angle to the sides of the mat.

"(2) A wrapper of the character named, consisting of a mat of fabric, and means on the back thereof within the ends thereof for engagement of a lacing cord, the portions of the mat outside of said means being free to form laps; said means being in series at an angle to each other, and each at an angle to the sides of the mat.

"(3) A wrapper of the character named, formed of a mat and lacing devices on the back thereof between the corners and center thereof in series, at an angle to each other and to the sides of the mat.

"(4) A wrapper of the character named, formed of a mat, lacing devices on the back thereof between the free corners of the mat and the center thereof, and a cord with a loop adapted to be passed from one lacing device to the other over the folded-in corner."

This invention met with a good deal of success, between 10,000 and 15,000 wrappers being sold during one year. Not long after its introduction to the public, the defendant began to make and sell a wrapper which is in all respects identical with the patented article, except that the fastenings are straps and buckles, instead of a lacing cord engaged with hooks, studs, or eyelets. This bill was thereupon filed, and the only question for decision is this: In view of the prior art, is the patent to be restricted to the exact device shown and claimed, or is it so far a pioneer invention as to be entitled to invoke the doctrine of equivalents? I have no doubt that the defendant's straps and buckles are an equivalent of the complainants' cords and hooks, and I should enter a decree in the complainants' favor upon the third claim, if I did not feel constrained by the history of the patent to construe it narrowly, and restrict it to the exact device set forth.

When the application was first made, the claims were as follows:

"(1) A wrapper of the character named, consisting of a piece of fabric and devices within the ends thereof for engagement of a closing and tightening lacing cord.

"(2) A wrapper of the character named, consisting of a mat of fabric and means on the back thereof within the ends thereof for engagement of a lacing cord, the portions of the mat outside of said means being free to form laps."

The application was rejected, the examiner saying:.

"Claim 1 is anticipated by Wohltman, 465,742, December 22, 1891, and is rejected thereon.

"Claim 2 covers the mat of fabric, with means on the back for tightening the wrapper about an inclosed ham, the portions outside of this means being free to form laps, shown in patent to Wohltman above cited, and the devices for the engagement of a closing and tightening lacing cord, shown in Maisel, 440,815, November 18, 1890. Claim 2 is accordingly rejected on references cited.

"Attention is invited to the following patents as of interest before amending: "Galster, 269,588, December 26, 1882; Metzger, 367,425, August 2, 1887; and Detwiler, 225,467, March 16, 1880.

"All references in 'Preserving, Exclusion of Air.'

"The claims should be narrowly drawn to his specific device."

Thereupon the application was amended by inserting the second paragraph hereinbefore quoted, describing the arrangement of the hooks, and by substituting the claims that now appear. The patent was then issued; but, under these circumstances, I do not think it has any claim to be a pioneer invention. On the contrary, it seems to me that the authorities require me to decide that the claims must be narrowly construed, and the patent restricted to its specific device. As was said by the supreme court in Roemer v. Peddie, 132 U. S. 317, 10 Sup. Ct. 99, 33 L. Ed. 383: "This court has often held that when a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it." Or, to use the language of Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 429, 14 Sup. Ct. 629, 38 L. Ed. 502: "But the patentee having once presented his claim in that form, and the patent office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim, or such a construction of his present claim as would be equivalent thereto." I think, therefore, that the complainants' patent must be so restricted that the fabric made by the defendant does not infringe. A strap and buckle is not a lacing cord, in any sense of the word, although, as I have said, it is no doubt an equivalent. It is intended to perform the same function in substantially the same way, but the defendant may use the device, because the complainants are not entitled to the benefit of the doctrine of equivalents.

The bill must be dismissed, with costs.