## LANGAN v. WARREN AXE & TOOL CO.

(Circuit Court, W. D. Pennsylvania.   June 25, 1910.)

### No. 11.

1. PATENTS (§ 168*)—CONSTRUCTION—EFFECT OF PROCEEDINGS IN PATENT OFFICE.

> A patentee, who canceled all the original claims in his application on objections by the Patent Office, and substituted a new claim which was allowed, is estopped to claim a construction of such claim which would make it equivalent to those canceled.

> [Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig. § 168.*]

2. PATENTS (§ 328*)—INVENTION—AGGREGATION OF OLD DEVICES—GRAB HOOK.

> The Langan patent, No. 595,181, for a grab hook used for skidding logs, is for an aggregation of an old form of grab hook with an old draft device, for which no novelty was claimed, by means which involved nothing patentable, and is void for lack of novelty and invention.

In Equity.   Suit by David H. Langan against the Warren Axe & Tool Company.   Decree for defendant.

William N. Cromwell, for complainant.

James Hamilton, for respondent.

YOUNG, District Judge. This case comes before us for final hearing upon bill, answer, replication, and proofs. The plaintiff charges that the defendant has infringed his patent No. 595,181, for an improvement in grab hooks used in skidding logs.

An examination of the patent in controversy shows that the following claim in the application was allowed:

"The combination with a pair of grab hooks, each consisting of a shank having an eye at its front end and at its rear end having a projected, perforated ear, immediately in front of which latter is located an angularly disposed driving tooth, said shank being widened above its tooth for the purpose of producing an increased impact surface, of a draft device connected with the eyes at the front ends of the shanks, substantially as described."

The complainant must be held to this combination, and, if he has failed to establish either that his combination was patentable or that the defendant has infringed, his case must fail. Figure 1 of his drawings is here inserted.

Fig. 1.

So that we may understand precisely what the complainant's patent means, we must consider the history of his application filed on January 25, 1897. He has set out in his specification, among other things, the following:

"My invention relates to improvements in grab hooks employed for skidding logs."

He then describes the ordinary way of making a grab hook, which has resulted in the thinning of the angle made by the tooth with the shank, thereby easily breaking in use, and resulting also in the sharpening of the back of the shank upon which the blow is received in driving it into a log resulting in the destruction of the maul and the placing of an ear perforate or imperforate in the shank in the rear of the tooth so as to afford a means by the insertion of a pointed tool or lever of removing the grab from the log.

He then described the feaures of his invention as follows:

, "One of the prime features of my invention is to so construct the hook as to obviate undue wear and destruction of the mauls and to thereby increase the period of their utility from a half day to a month, more or less; secondly to so construct the tooth of the hook as to adapt it to be more readily driven in

the side of the log to be skidded; thirdly to increase the strength of the hook at the point at which the greatest strain occurs, to wit, the angle; and, fourthly, to so form the hook as to facilitate its withdrawal from its engagement with the log by means of the usually employed pike-lever. With these various objects in view, my invention consists in the particular and peculiar form of hook herein described, and pointed out in the claim. * * * Having described my invention, what I claim is:

"1. The herein described improved grab hook, the same consisting of a shank having an angularly disposed driving tooth, the same being substantially triangular in cross-section and tapered to a driving point and having its opposite faces or sides between its edges, concaved, substantially as specified.

"2. The herein described improved grab hook, the same comprising a shank having an angularly disposed driving tooth, said shank in line with the tooth being widened to form an increased impact surface, substantially as specified.

"3. The herein described improved grab hook, the same consisting of a shank having a driving tooth, said shank at that side thereof opposite to which the tooth is located being provided with opposite overhanging elongated flanges to form increased impact surface opposite the tooth substantially as specified.

"4. The herein described improved grab hook, consisting of a shank having a driving tooth, and beyond the same at its rear end provided with a projecting ear adapted to be engaged by a pike-lever or other device employed for prying the hook from a log, substantially as specified.

"5. The herein described improved grab hook, the same consisting of a shank having a driving tooth at one side, and at its rear end above the tooth provided with a projecting ear having a perforation to receive the spike of a spike-lever, substantially as specified.

"6. The herein described improved grab hook, consisting of a shank having an eye at its opposite ends and between the same provided with a driving tooth, said shank being widened above its tooth for the purpose of producing an increased impact surface, substantially as specified."

His entire specification refers to improvements in the making of a single grab, and the only reference to the use of the grab is as follows:

"Fig. 1 is a plan of a pair of grab hooks illustrating their relative arrangement when in an engagement with a log, for the purpose of skidding the same.

"In use, a pair of these grab hooks is employed for skidding a log; such pair being shown in Fig. 1. The links, or chains, 1, are connected to the eyes, c, and these in turn are connected at their front ends by a ring, m, to which is attached the usual draft appliance not considered necessary to be herein shown."

While his application was pending in the Patent Office, upon objection by the Examiner, he canceled all his claims and inserted claim 3, which is as follows:

"The combination with a pair of grab hooks, each consisting of a shank having an eye at its front end and at its rear end having a projecting perforated ear immediately in front of which latter is located an angularly disposed driving tooth, said shank being widened above its tooth for the purpose of producing an increased impact surface, of a draft device connected with the eyes at the front ends of the shanks, substantially as specified."

All the claims except claim 3 having been rejected by the Examiner and canceled by the applicant, claim 3 was allowed. An examination of the claim allowed shows that there was clearly no intention on the part of the applicant at the time of filing his application, or at any subsequent time, as shown by the file wrapper and contents, to claim anything except an improvement in the grab hook. There was nothing in his application to show any intention on his part to claim as new

the combination subsequently allowed him, except claim 3, and it was inserted upon the decision of the Examiner that:

"Claim 6 is incomplete without the links, and the eye in the end of the shank is useless without the other elements."

The complainant having canceled all his original claims is now estopped to claim the benefit of them or such a construction of his present claim as would be equivalent thereto.

As was said in Morgan Envelope Company v. Albany Perforated Wrapping Paper Company, 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500:

"But the patentee having once presented his claim in that form, and the Patent Office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim or such a construction of his present claim as would be equivalent thereto."

Even though the applicant had not canceled his claims, they were clearly met by the patents referred to by the Examiner and by others produced by the respondent at the hearing. It is certain, therefore, that all the elements claimed by plaintiff which went to make up the grab hook proper were old.

The only remaining elements in the combination for which he obtained his patent are links inserted in the eye at the end of the shank in front of the tooth in each of a pair of hooks, the chain or link attached thereto, and the uniting of the two in a single link or ring to which in use the draft device may be attached.

The applicant in his claim and the Patent Office in its allowance of the claim regarded the links in the eye, the chain attached thereto, and the union of the chains by a link or ring as a draft device. The elements then that went to make up the combination were the grab hooks and the draft device. We have seen that the grab hooks were old, and that the patentee does not have a patent for them and could not have. The draft device alone remains.

There seems to be no novelty in the draft device. Our own experience would show us that from time immemorial the device used in drawing an object by attaching the drawing device to two separate points has been used. The ordinary clevis used at the end of a plow beam is the most common form, as is also the placing of a pair of shafts near each end of the axletree. It was not regarded by complainant as novel. The words of his specification indicate this, for it is nowhere there claimed as being either new or of consequence. He does not in his evidence claim that the draft device is new; his whole idea being that the grab hook, with its strengthening angle, flat back, and perforated shank behind the tooth, is what he intended to have patented and which he supposed was patented. His expert witness, Arthur P. Greeley, also believed that to be the fact. He testifies on pages 91 and 92 (complainant's record):

"It would also seem to be clear that the patentee did not consider that it was necessary to explain, or to show, any details relating to the draft appliance, beyond the mere indication of the links and the ring. I think this paragraph would also indicate that the patentee was familiar with the fact that it was necessary in the use of grab hooks to employ them in pairs and connect

the pair of grab hooks by the use of links or chains to the rope or chain connected with the power employed to skid the logs. Taking this paragraph in connection with what succeeded it, I think that there can be no doubt that the patentee considered his invention to be the improvements in the grab hook, and not in the draft appliance or any particular way of coupling up grab hooks or connecting them to a draft device."

Again on cross-examination (page 175 of complainant's record), he says:

"As I take it, the patent in suit does not assert any novelty in the draft device which is shown, or in the broad idea of connecting two grab hooks with a draft device. The drawings and specifications show and describe the grab hook of the patentee's invention connected up with the draft device for the purpose of showing the manner in which the grab hooks are to be used. It seems to me that the particular grab hooks disclosed in the patent in suit, when so connected up with the draft device, form a combination of devices adapted to perform a definite function better than the devices referred to in the patent as prior in date. The draft device is necessary to the practical use of the grab hook, and, in my opinion, combines with grab hooks of the patent in suit for a useful purpose; the useful purpose being materially modified by the specific construction of the grab hook."

And again on page 193, on cross-examination:

"The structure called for by the claim is the combination of two grab hooks having the peculiar and particular construction shown and described in the patent in suit with the draft device commonly employed with grab hooks. While, in my opinion, this is a true combination, the novelty of the combination lies in the particular and peculiar construction of the hook and its combination with the draft device, in a certain sense the addition of the draft device as an element of the claim might be regarded as unnecessary to a definition of the invention which the patentee made, though it is necessary to make a complete device for use in the skidding of logs, as I understand it, in the ordinary practice."

It has been included in former patents in combination with grab hooks. Patent of Sykes, No. 67,375, dated July 30, 1867, shows this device. Also, patent of A. A. Porter, No. 370,350, patented September 20, 1887. The draft device, therefore, was not patentable.

In our opinion, therefore, every element of the combination was old, and the means of combining these old elements has nothing either new or patentable in it. The case cannot be better described than in the words of Justice Brown, in Richards v. Chase Elevator Company, 159 U. S. 477, 16 Sup. Ct. 53, 40 L. Ed. 225:

"To make a combination of old elements patentable, there must be some new result accomplished, and, as the result in this case is a mere aggregation of the several functions of the different elements of the combination, each performing its old function in the old way, we see nothing upon which a claim to invention can be based."

The complainant's bill must therefore be dismissed, with costs to the defendant.

Let a decree be drawn accordingly.