## BOYNTON v. CHICAGO HARDWARE FOUNDRY CO.

### No. 5318.

Circuit Court of Appeals, Seventh Circuit.
June 6, 1935.

Albert G. McCaleb and Warren C. Horton, both of Chicago, Ill., for appellant.

Arthur Wm. Nelson and Charles H. Watson, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

This bill charged appellee with infringement of United States patent to Boynton, No. 1,666,232. The patent was issued April 17, 1928, on an application filed July 16, 1927. It contains three claims [1] all of which are involved in this proceeding. The defense was invalidity and non-infringement. The court dismissed the bill for want of equity in view of Mercer, No.

---

[1] "1. The method of making mosaic comprising filling a rubber matrix having a mosaic design with cementitious inlay material *to provide inlays separated by joints*, placing a cementitious foundation material against said inlay material so as to bond therewith, causing said cementitious materials to harden, removing said matrix, and filling the joints with pointing material.

"2. The method of making mosaic comprising filling a rubber matrix having a mosaic design with cementitious inlay material *to provide inlays separated by joints*, causing said cementitious material to harden, removing said matrix, *and filling the joints*.

"3. The method of making mosaic comprising filling a flexible matrix having a mosaic design with cementitious inlay material *to provide inlays separated by joints*, placing a cementitious foundation material against said inlay material so as to bond therewith, causing said cementitious materials to harden, removing said matrix, *and filling the joints*." (Our italics.)

763,064, and Taylor, No. 61,641, which were not cited by the Examiner.

The patent relates to a method of simulating mosaics. The specification, discloses that its primary object is the provision of a method whereby a cementitious material in its plastic state may be arranged in a desired pattern, especially as to the contour of the inlay designs and their character, the material forming a layer which may be applied to a backing or foundation. The whole is then allowed to set and harden, producing a mosaic which may be finished by pointing and polishing the joints, or otherwise treated as desired. To that end a matrix is provided within which the inlays are arranged and the foundation is applied. After hardening, the matrix is removed, thus producing the mosaic in its initial condition.

The mosaic is made in an inverted position. The matrix, which is of flexible material, is in the nature of a mold with outstanding ridges forming the boundaries for the several inlays. It is preferably made of rubber or elastic material, but, as stated in the specifications, the manner of making it is not pertinent to the invention. It is laid upon its back and the inlay cavities filled, substantially flush with the outer edges of the ridges, with cementitious material of the desired color and character. Over the surface of the inlays is placed a backing or foundation of like cementitious material, which will bond with the inlay material. After hardening by setting, the unit and matrix are inverted, and the matrix is peeled from the mosaic. This is easily and quickly done without requiring force or marring the mosaic or the matrix, due to the flexibility and elasticity of the matrix. The mosaic is then treated by filling or pointing the joints with cementitious material.

Mercer's patent No. 763,064 was issued June 21, 1904, upon an application filed December 3, 1903. It pertained to the process of making mosaic tile for pavement, mural, and other decoration. Generally, it disclosed the same method of making mosaics as does Boynton. It differed, however, in two details. In Mercer the ridges of the matrix which form the boundaries of the several inlays were triangular, or V-shaped, the base of the triangle resting upon the floor of the matrix; in Boynton they were rectangular. Those forms were reflected, though inverted, in the mosaic, and constituted the joints between the several inlays,

which were filled or pointed with cementitious material after the matrix was removed. Thus in Mercer the joints were V-shaped, and in Boynton they were rectangular. Mercer made no claim as to the constituency of his matrices. He used plaster-of-paris and suggested any other medium adapted to be cast, such as gelatin, wax, caster's sand, clay or metal. Boynton, on the other hand, claims a rubber or flexible matrix, and he urges that.

The gist of the Boynton patent resides in achieving divorcement of a matrix from the mosaic formed therein without in any way injuring the mosaic or detracting from the subsequent usefulness of the matrix. He claims to have solved the problem of matrix and mosaic divorcement, thereby initiating simulated mosaic production as a new industry. It is obvious, therefore, that the primary object of the patent, as disclosed by the specification, is not now stressed as its most salient feature, although both are included in the claims.

It can not be successfully controverted that Mercer produced the same mosaic in the same manner as did Boynton, except that in Mercer the joints were V-shaped instead of rectangular. The virtue of the latter, as claimed by Boynton, lies in the fact that the vertical sides and the horizontal bottom will hold the pointed joints more securely than will the triangular sides and apex-shaped bottom of Mercer. Likewise he argues that the rectangular ridges of his matrix will be more difficult of divorcement from the mosaic than in Mercer. Hence by the use of a rubber or flexible matrix he claims to have accomplished the desired result without marring either the mosaic or the matrix, and the latter is preserved for future use. That result, he says, was not possible of accomplishment with a matrix made of the constituents suggested by Mercer. If made of metal the divorcement would ruin the mosaic; if made of the other suggested materials it would destroy the matrix and prevent its future use. It is not denied, however, that the matrix may be made with any of the materials suggested by Mercer, and aside from metal, it is not contended that the use of any of the other materials suggested will in any manner damage the mosaic. It may be true that a matrix made of such other materials may not be successfully peeled from the mosaic without injury to the matrix, but the evidence does not warrant such a broad conclusion, and it can not be supported by

judicial knowledge. Mercer disclosed a matrix made of any element adapted to be cast, and, among others, he specifically mentions gelatin. It is both flexible ·and elastic, and the record does not disclose that a matrix made of it will be marred by peeling it from the mosaic. That, we assume, might depend upon its consistency, regardless of whether the form of the ridges be V-shaped or rectangular. We can not accept appellant's conclusion that Mercer was unsuccessful in divorcing his matrix without destroying it, because the record is silent on that point.

That rubber is adapted to be cast is clearly shown by Taylor, supra, which relates to elastic molds for producing works of art. It is true that in cases where there was much undercut work he generally made incisions in the rubber at the undercut points so that the mold might be easily removed. That, indeed, would prevent its future use as a mold or matrix, but in the event that there were no undercut points we are warranted in inferring that the mold was not marred, and might have been used again.

We are unable to discern anything disclosed by Boynton which was not taught by Mercer and Taylor. Conceding, but not admitting, that neither taught all that Boynton disclosed, yet appellant could not be credited with invention if he disclosed nothing more than they both taught, unless the combined methods produced a new result, or an old result in a more facile, efficient or economical manner. We think the evidence does not warrant that conclusion.

We are not unmindful of the presumption of validity which attaches to the patent by virtue of its issuance, but that presumption can not stand against pertinent art which was not considered by the Examiner.

We are also urged to consider the commercial success of the patent. This we have done, but we do not find it impressive. Up to the time of the trial, appellant had sold 175 mosaics made by his process. It should be said, however, that his illness may have prevented him from making and selling a larger number. In addition to this, he sold a license for the state of California and the Pacific Coast, and one for the state of Texas, upon which he received advance royalties in the respective sums of $5,000 and $3,500. No showing was disclosed with respect to the commercial success under those licenses, except that the

California licensees had ceased operation under their license, due perhaps to the depression. The record further discloses that appellee discontinued the manufacture and sale of the entire line of "so called Verona furniture, including the tables having mosaic tops" because it was unprofitable. It had made and sold not to exceed 450 tables with simulated mosaic tops.

The file wrapper discloses that certain claims of appellant which were rejected by the Patent Office are precisely the same as those now in issue, with the exception of certain clauses relating to the joints separating the inlays. These are indicated by our italics in foot-note 1. They were rejected for lack of invention over Snedekor, No. 457,975, which ·discloses molding over a rubber matrix. In that ruling appellant acquiesced by canceling original claims 2, 4, 6 and 7, and amending original claims 1, 3 and 5 by adding the italicized portions above referred to, and renumbering them respectively 1, 2 and 3. Original claims 2, 4 and 6 are precisely the same, respectively, as the present claims 1, 2 and 3 except that the latter contain the italicized portions referred to. In Morgan Envelope Company v. Albany Perforated Wrapping Paper Company, 152 U. S. 425, 14 S. Ct. 627, 629, 38 L. Ed. 500, the Court said: "But the patentee having once presented his claim in that form, and the Patent Office having rejected it, and he having acquiesced in such rejection, he is, under the repeated decisions of this court, now estopped to claim the benefit of his rejected claim or such a construction of his present claim as would be equivalent thereto." That principle would seem to be applicable regardless of whether the Patent Office was right or wrong in rejecting the original claim. Vanmanen v. Leonard (C. C. A.) 248 F. 939. Under those rulings we think appellant is estopped to claim invention on a rubber or flexible matrix, unless by combination with other matters contained in the amendments a new result is produced, or an old result is produced in a more facile, efficient or economical manner. We are convinced, however, that no such result was produced. The rubber or flexible matrix was not new, nor was the filling of the joints, which was merely permissive on the part of Boynton. Indeed, there seems to be no functional relationship between the two steps, and no modification of the old use of either.

We are of the opinion that inventive genius did not manifest itself in the use of rectangular instead of V-shaped ridges. That, at most, would involve nothing more than mechanical skill. The ridges produced by appellee's method are quite like both Boynton and Mercer. The sides of his ridges are V-shaped, but the apices are considerably blunted and have somewhat the appearance of the top of Boynton's ridges. If appellee infringed one he clearly infringed the other, and if Mercer anticipated appellee he likewise anticipated Boynton, but in this respect we think there was no invention, either as a separate step. or in combination.

Decree affirmed.