CONVERTIBLE TOP REPLACEMENT
CO., Inc., Plaintiff, Appellant,

v.

ARO MANUFACTURING CO., Inc., et al.,
Defendants, Appellees.

ARO MANUFACTURING CO., Inc., et al.,
Defendants, Appellants,

v.

CONVERTIBLE TOP REPLACEMENT
CO., Inc., Plaintiff, Appellee.

Nos. 5991, 5993.

United States Court of Appeals
First Circuit.

Dec. 13, 1962.

Certiorari Granted April 1, 1963.
See 83 S.Ct. 1015.

Elliott I. Pollock, Washington, D. C., with whom Paul V. Power, Boston, Mass., was on brief, for Convertible Top Replacement Co., Inc.

Charles Hieken, Boston, Mass., with whom David Wolf and Ezekiel Wolf, Wolf & Greenfield, Boston, Mass., were on brief, for Aro Mfg. Co., Inc., et al.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

Upon receipt of the mandate of the Supreme Court in Aro Mfg. Co., Inc. v. Convertible Top Replacement Co., Inc., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), the court below after hearings entered a judgment which, as amended, ordered, adjudged and decreed: (1) that by virtue of a territorial grant the plaintiff, Convertible Top Replacement Co., Inc., was possessed of the right, title and interest in the Mackie-Duluk patent No. 2,569,724 in the Commonwealth of Massachusetts, (2) that neither the corporate defendant, Aro Manufacturing Co., Inc., nor the individual defendants, either individually or as co-partners doing business as Aro Top Sales Company, had infringed claims 3, 4, 5, 7, 8, 9 and 10 of the above patent, (3) that the plaintiff's amended complaint be dismissed with costs to the defendant of $3,841.77 and (4) that the defendants' counterclaim for a declaratory judgment be dismissed without prejudice and without costs. In No. 5991 the plaintiff below as appellant here contends that this judgment is erroneous in that it fails to make any distinction between replacements of the fabric portions of convertible automobile tops for General Motors cars, which were licensed under the patent, and those for Ford cars, which were not, and in that it fails to order, adjudge and decree that the Mackie-Duluk patent is valid. In No. 5993 the defendants below as appellants here contend that the judgment is erroneous because it fails to award them such damages as they may be able to establish in future proceedings, plus attorney's fees, trebled, for antitrust law violation by the plaintiff. We shall consider the appeals in numerical order but to dispose of the respective contentions of the parties it will be helpful to review the judicial proceedings in this tortuous litigation.

It began in April, 1956, with a complaint, later amended, by Convertible Top Replacement Co., Inc., C.T.R. hereinafter, which charged the defendant, Aro Manufacturing Co., Inc., and its principal officers, hereinafter collectively Aro, with infringement and contributing to the infringement of U. S. Patent No. 2,569,724 issued on October 2, 1951, to Harry A. Mackie and Stanley Duluk for "Convertible Folding Top with Automatic Seal at Rear Quarter" by making, selling and installing specially cut fabric tops for use in the patented structure. The defendants answered denying the basic allegations in the complaint, alleging patent misuse and specifically asserting that the patent is invalid and if valid not infringed. The defendants also filed a counterclaim for a declaratory judgment that the patent had been misused, that it was invalid and if valid not infringed. A defendant's motion for summary judgment based on affidavits and answers to interrogatories was denied and the case went to trial by the court sitting without a jury.

The district court after full hearing found that the plaintiff as assignee was entitled, by virtue of a territorial grant, to sue on the patent in Massachusetts, that the defendants had "clearly not made out" their claim that the plaintiff had misused its patent and that the defend-

ants had not established their basic defense of invalidity.[1]

The court then turned to the question of infringement which it said had two aspects. Referring to the established fact that General Motors Corp. was licensed under the Mackie-Duluk patent while Ford Motor Co. was not, the court said: "As to the former, defendants are protected if their fabrics are to be regarded as mere repair, and not reconstruction. As to the latter, defendants have no protection against a claim for contributory infringement under § 271 (c) if they made a material part, with knowledge that it was to be used in a patented structure, which was not a staple article of commerce suitable for substantial non-infringing use." The court summarily disposed of the issue of infringement insofar as unlicensed Ford Motor Co. cars were concerned by finding that there was no substantial non-infringing use for fabric tops specially made by the defendants for the cars of that manufacturer having the Mackie-Duluk top structure, which fabrics, it said, " * * * are admittedly purposely designed for, and advertised for, Mackie-Duluk tops." The court gave more extended consideration to the question dispositive of the issue with respect to infringement by replacing the fabric part of convertible tops on licensed General Motors Corp. cars, i. e. whether such replacement constituted mere repair or major reconstruction.

Finding that replacing the fabric tops on cars of that manufacturer was "not permissive repair" the court entered an interlocutory judgment that the Mackie-Duluk patent was good and valid in law as to its claims 3, 4, 5, 7, 8, 9 and 10, that the defendants had infringed or contributorily infringed those claims with respect to both Ford and General Motors cars, that the defendants be enjoined from further infringement and that the question of the plaintiff's damages be referred to a master, with costs to the plaintiff.

On appeal this court affirmed, 270 F.2d 200 (1 Cir., 1959).

We took the validity of the Mackie-Duluk patent for granted for the reason that the issue of its validity had hardly been argued at all and because we were not even sure that all the evidence on that issue had been included in the parties' joint record appendix. Our attention at that time was directed primarily to the basic question argued before us by the appellants, that is, to the question whether replacing the fabric portion of the patented tops for convertible automobiles constituted a permissible repair of the patented structure or an impermissible reconstruction of it, upon the answer to which the issue of contributory infringement with respect to licensed General Motors cars depended. We did not specifically consider infringement with respect to unlicensed Ford Motor Co. cars for that question was not greatly stressed and we were convinced from the evidence that the court below was clearly correct in its conclusion that the defendants' custom made tops specifically designed and advertised for those cars constituted "a material part of the invention" and were not "a staple article of commerce suitable for substantial noninfringing use" within the meaning of 35 U.S.C. § 271(c). Nor did we specifically consider any question of possible patent misuse by the plaintiff-appellee, for, although the defendants-appellants argued patent misuse orally and in their brief, their statement of the questions involved pursuant to Rule 24(3) (b) of this court quoted in the margin [2] did not set forth or necessarily suggest any such question.

---

1. It found: "Mackie-Duluk was a substantial and enlightened step, filling a long-felt want, in a field in which defendants have produced, with one exception [i. e. a patent to one Ackermans discussed at length and distinguished] only paper patents, the most emphasized being foreign, which did not even purport to do what Mackie-Duluk accomplished."

2. "The brief of the appellant or petitioner shall contain the following matter
 * * *

 * * * * *

 "(b) A statement of the questions involved, setting forth each question separately, in the briefest and most general terms, without names, dates, amounts or

Moreover, no issue of patent misuse was presented by the pleadings insofar as printed in the parties' joint record appendix on that appeal. Allegations of misuse in the defendants' answer, and an allegation of misuse in their counterclaim were omitted from their answer and counterclaim as printed in the joint record appendix then before this court. Only now has Aro's counsel supplied those omitted allegations. He has included the heretofore omitted allegations of patent misuse as made in his answer in his record appendix as counsel for the appellees in No. 5991 and his allegation of misuse in his counterclaim in his record appendix as counsel for the appellants in No. 5993.

The Supreme Court granted certiorari allowing the United States to file a brief as *amicus curiae* in support of the petition, 362 U.S. 902, 80 S.Ct. 609, 4 L.Ed. 2d 553 (1960). It denied a motion of the American Patent Law Association for leave to file a brief as *amicus curiae*, 364 U.S. 806, 81 S.Ct. 40 (1960), and reversed, Aro Manufacturing Co., Inc., et al. v. Convertible Top Replacement Co., Inc., 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed. 2d 592 (1961), petition for rehearing or alternative motion for amendment or clarification of opinion denied, 365 U.S. 890, 81 S.Ct. 1024, 6 L.Ed.2d 201 (1961), and remanded the case to the court below for further proceedings in conformity with its opinion. The judgment from which the present appeals have been taken was entered in an attempt to carry out that mandate. To see whether it has succeeded we turn to the Supreme Court's opinion.

The opinion of the Court written by Mr. Justice Whittaker, after summarizing the facts, notes at page 338 of 365 U.S., at page 601 of 81 S.Ct., 5 L.Ed.2d 592 that the validity of the patent was not challenged. The opinion then continues:

"The principal, and we think the determinative, question presented here is whether the owner of a combination patent, comprised entirely of unpatented elements, has a patent monopoly on the manufacture, sale or use of the several unpatented components of the patented combination. More specifically, and limited to the particular case here, does the car owner infringe (and the patent supplier contributorily infringe) the combination patent when he replaces the spent fabric without the patentee's consent?"

The Court then went on to point out, 365 U.S. at page 339, 81 S.Ct. at p. 601, 5 L.Ed.2d 592 that the fabric portion of the tops was an unpatented element of the combination patent because: "The patent makes no claim to invention based on the fabric or on its shape, pattern or design." Wherefore the Court said it was immaterial whether the shape of the fabric might have been patentable. From the foregoing the Court on the next page of its opinion said: "It follows that petitioners' [Aro's] manufacture and sale of the fabric is not a *direct* infringement under 35 U.S.C. § 271(a)," but that the question remained whether such manufacture and sale constituted "a *contributory* infringement of the patent under 35 U.S.C. § 271(c)." Whether it did or not the Court said on page 341 of 365 U.S., on page 602 of 81 S.Ct., 5 L.Ed.2d 592 depended upon whether "replacement by the purchaser himself would in itself constitute a *direct* infringement under § 271(a), for it is settled that if there is no *direct* infringement of a patent there can be no *contributory* infringement." Then on page 342 of 365 U.S., on page 602 of 81 S.Ct., 5 L.Ed.2d 592, saying that § 271(a) "left intact the entire body of case law on direct infringement," the Court posed the ultimate question before it as follows:

"The determinative question, therefore, comes down to whether the car owner would infringe the combination patent by replacing the worn-out fabric element of the patented convertible top on his car, or

particulars of any kind. Ordinarily no point will be considered which is not set forth in or necessarily suggested by the statement of questions involved."

even more specifically, whether such a replacement by the car owner is infringing 'reconstruction' or permissible 'repair.' "

The Court summarized its answer to this question on page 346 of 365 U.S., on page 604 of 81 S.Ct., 5 L.Ed.2d 592 in the following words:

"The decisions of this Court require the conclusion that reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to 'in fact make a new article,' United States v. Aluminum Co. of America, supra, [148 F.2d] at 425, after the entity, viewed as a whole, has become spent. In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity, as, for example, in Cotton-Tie Co. v. Simmons, supra [106 U.S. 89, 1 S.Ct. 52, 54, 27 L.Ed. 79]. Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property. Measured by this test, the replacement of the fabric involved in this case must be characterized as permissible 'repair,' not 'reconstruction.' "

It is clear from the foregoing quotations from the opinion of the Court that the attention of the four justices who joined in that opinion was focused on the question of reconstruction versus repair which underlies the question of contributory infringement with respect to replacement tops for licensed General Motors cars but not for unlicensed Ford cars. And the same may be said of the opinions of the concurring and dissenting justices. The only suggestion that other considerations underlie the question of infringement by replacing the fabric portions of tops on unlicensed Ford cars is to be found in the final sentence of Mr. Justice Brennan's concurring opinion (365 U.S. at p. 368, 81 S.Ct. at p. 616, 5 L.Ed.2d 592) which reads: "I, therefore, think that the judgment of the Court of Appeals must be reversed, except, however, as to the relief granted respondent in respect of the replacements made on Ford cars before July 21, 1955." [3]

The puzzling question is whether the Supreme Court in reversing this court intended to reverse *in toto* or only to reverse insofar as replacement tops for General Motors cars were concerned.

What the Court said in its opinion gives us little help. What it did not say, however, seems to us to indicate that it was not deciding the question of contributory infringement with respect to unlicensed Ford cars.

In the first place this would seem to be the interpretation placed upon the Court's opinion by Mr. Justice Brennan. Otherwise he would not have concurred generally but would have concurred only in part and dissented in part. We think he must have meant to suggest only that the Court be more specific.

 In the second place, neither in the opinion of the Court nor in the opinions of the concurring justices is any mention made of the basic rule established in many cases which, the Court said, was "left intact" by § 271(a), that not only is the manufacturer of an infringing article an infringer but so also is a user of an infringing structure or device, for the monopoly conveyed by a patent covers the right to make, sell and use.[4] Therefore, a purchaser of an in-

---

3. The date mentioned is the date of a release and license granted to Ford Motor Co. by C.T.R.'s assignor. It may be that under that document the critical date is December 31, 1955.

4. See Birdsell v. Shaliol, 112 U.S. 485, 5 S.Ct. 244, 28 L.Ed. 768 (1884); Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147 (1929) (infringement by both the manufacturer (Dent Hardware Co.) and user (Sanitary Refrigerator Co.) of the patented product); and see General Talking Pictures Corp. v. Western Electric Co., 305 U.S. 124, 127, 59 S.Ct. 116, 117, 83 L.Ed. 81

fringing Ford car is himself an infringer and as an infringer he cannot legally replace any part of his top, for by the purchase of his car he obtained no license to use the patented structure, even less to repair it.[5] And one who supplies the infringing purchaser-user-repairer with a component of the patented top constituting a material part of the invention (certainly the fabric portion of the top cut or shaped in the only way it could possibly function in the combination is a material part of the Mackie-Duluk invention) knowing the same to be especially made or especially adapted for use in an infringement (Aro admittedly designed, made and advertised replacement tops for unlicensed Ford cars) and not, as the District Court originally found and this court agreed, a staple article suitable for a substantial non-infringing use, is a contributory infringer under Title 35 U.S.C. § 271(c) quoted in the margin.[6]

Since none of the foregoing matters relevant to replacement tops for unlicensed Ford cars was mentioned or, except for Mr. Justice Brennan, even suggested, we can hardly assume any decision with respect to them.[7] The Court's silence seems significant. We cannot lightly assume that the Court would *sub silentio* overrule a very substantial body of authority on direct infringement, which it specifically said remained "intact," and then construe § 271(c) in such a way as practically to leave it a dead letter. We therefore conclude that our previous decision in this case was not reversed insofar as unlicensed Ford cars are concerned. To carry out the Supreme Court's mandate we think the court below should enter a judgment that the Mackie-Duluk patent is valid as to the claims enumerated and contributorily infringed with respect to replacement tops for unlicensed Ford cars.

(1938), where it is said: "Pictures Corporation * * * is in no better position than if it had manufactured the amplifiers itself without a license. It is liable because it has used the invention without license to do so."

5. On the necessity for an implied license to repair, see Thomson-Houston Electric Co. v. Ohio Brass Co., 80 F. 712, 723 (C.A.6, 1897); Union Special Machine Co. v. Maimin, 161 F. 748, 750 (C.C.Pa., 1908), affirmed 165 F. 440 (C.A.3); National Brake & Electric Co. v. Christensen, 38 F.2d 721, 723 (C.A.7, 1930); Remington Rand Business Service, Inc. v. Acme Card System Co., 71 F.2d 628, 630 (C.A.4, 1934); Electric Auto-Lite Co. v. P. & D. Mfg. Co., 109 F.2d 566, 567 (C.A.2, 1940); and Ruth v. Stearns-Roger Mfg. Co., 13 F.Supp. 697, 712–713 (D. Colo.1935); Cf. Deller's Ed. of Walker on Patents, Sec. 379, at pp. 1486–1487.

6. "(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article, or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."

7. In further support of the view that the attention of the members of the Court was concentrated on the situation with respect to licensed General Motors cars, we note that apart from Mr. Justice Brennan's express reference to a distinction between Ford and General Motors top replacements there are indications in the opinion of the Court that the licensed-unlicensed distinction was recognized and only the licensed situation considered. Among these "clues" in Mr. Justice Whittaker's opinion are his statement 365 U.S. at p. 344, 81 S.Ct. at p. 603, 5 L.Ed.2d 592 that the patent licensee's, C.T.R.'s, contention would involve a "new license" and "another royalty" *and his conclusion 365 U.S. at p. 345, 81 S.Ct. at p. 604, 5 L.Ed.2d 592 "that a license to use a patented combination includes the right"* to repair. In his concurring opinion, Mr. Justice Black must have had the licensed situation in mind in asserting, at 365 U.S. at p. 360, 81 S.Ct. at p. 612, 5 L.Ed.2d 592, that "one royalty to one patentee for one sale is enough * * *." And Mr. Justice Harlan, in his dissenting opinion, states 365 U.S. at p. 369, 81 S.Ct. at p. 616, 5 L.Ed.2d 592, "The underlying rationale of the rule is of course that the owner's *license to use* the device carries with it an *implied license* to keep it fit for the use for which it was intended." (Emphasis added.)

**58**

We come now to Aro's contention as appellant in No. 5993 that it is entitled to a decree that the plaintiff below, C.T.R., violated the antitrust laws and thereby rendered itself liable to three times the damages, including counsel fees, which Aro may be able to establish in further proceedings. The short answer to this contention is that Aro has never pleaded a cause of action under the antitrust laws.

It alleged patent misuse in its answer to the complaint. But it did not print those allegations in the joint record appendix before us on the previous appeal nor, in its brief on that appeal, did it mention patent misuse in its statement of the questions involved. Patent misuse as a defense was clearly abandoned.[8] Now counsel for Aro as appellant in No. 5993 seeks not only to revive that abandoned defense but also by some subtle legal alchemy to transform it into a positive claim for triple damages and counsel fees under the antitrust laws. We are not aware of any basis or authority for such a metamorphosis. So much for the allegations of patent misuse in the defendants' answer.

But in addition to the allegations in its answer, Aro alleged in its counterclaim: "That this court find and enter a decree herein that said Patent No. 2,569,724 has been misused." And this its counsel argues is a sufficient allegation of a cause of action under the antitrust laws because, he says, the record shows that Aro is entitled to damages for violation of those laws, and Rule 54(c) of the Federal Rules of Civil Procedure provides: " * * * every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Even if we assume that the allegation of patent misuse in Aro's counterclaim has somehow survived to this stage of the litigation, the Rule quoted from above does not authorize a grant of the relief requested. That Rule should be liberally construed to grant a prevailing party substantial justice. But it is not to be so liberally construed as to conflict with the requirement of Rule 8(a) that a pleading which sets forth a claim for relief, whether on original claim or a counterclaim, shall contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief to which he deems himself entitled. There is no merit whatever in this appeal.

A judgment will be entered vacating the judgment of the District Court and remanding the case to that Court for entry of a judgment in conformity with the views expressed in this opinion.

---

8. The Supreme Court in a footnote 365 U.S. at page 344, 81 S.Ct. at p. 603, 5 L.Ed.2d 592 of its opinion said that the doctrine of patent misuse was "not an issue in this case."