*647 Mr. Justice Black,
with whom The Chief Justice, Mr. Justice Douglas and Mr. Justice Clark join,
dissenting.
For a number of reasons I would reverse the judgment, and reinstate the order of dismissal of the District Court.
I.
With regret I find it necessary to disagree with the inferences the Court draws from the past history of this case. Respondent Convertible held exclusive rights for Massachusetts in a combination patent on a convertible automobile top, the combination consisting of wood or metal supports, a fabric cover, and a mechanism to seal the fabric against the side of the automobile in order to keep out weather. None of the elements of the combination was patented or patentable. During the years in question General Motors Corporation and the Ford Motor Company manufactured automobiles with tops like those described in the patent. General Motors had a license from Convertible authorizing it to do so. Ford did not. Petitioner Aro manufactured and sold fabric replacement covers which were purchased by owners of both General Motors and Ford cars when the covers originally installed on the cars wore out. Convertible settled a claim it made against Ford for direct infringement, and did not sue Ford dealers or Ford car owners. It maintained also that the individual General Motors and Ford car owners who replaced their worn-out covers with Aro replacement covers by doing so directly infringed the combination patent. Convertible did not sue the individual car owners who patched or replaced the worn-out fabric, but it did bring this suit against Aro, charging that Aro by selling the replacement fabric thereby helped the individual car owners infringe and so became liable as a con- *648 tributary infringer under 35 U. S. C. § 271 (c).[1] The District Court held that the patent was valid and that Aro had been guilty of contributory infringement; it enjoined Aro from further alleged infringements and ordered an accounting to determine the damages due Convertible from Aro’s sales of replacement fabrics to owners both of General Motors and of Ford cars. 119 U. S. P. Q. 122. The Court of Appeals affirmed the judgment, 270 F. 2d 200, and we granted certiorari to review it. We reversed the judgment. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U. S. 336. We denied a petition for rehearing or alternative motion for amendment or clarification in which Convertible argued that our reversal applied only to replacements of General Motors, and not Ford, cars. 365 U. S. 890.
When the District Court received the mandate of this Court, it entered judgment dismissing the complaint on the ground that this Court’s decision and mandate had reversed the prior judgment in its entirety. But Convertible appealed the dismissal to the Court of Appeals. That court said:
“The puzzling question is whether the Supreme Court in reversing this court intended to reverse in toto or only to reverse insofar as replacement tops for General Motors cars were concerned.” 312 F. 2d 52, 56 (C. A. 1st Cir.).
Thereupon the Court of Appeals, reversing the District Court’s action taken in obedience to this'Court’s man *649 date, held that this Court when it said “Reversed” at the end of its opinion had meant to reverse, not the entire judgment, but only that part of the judgment enjoining Aro from selling replacement fabrics for General Motors cars, which were made under licenses, arid ordering an accounting for such sales in the past; the Court of Appeals said that this Court had in effect affirmed the earlier judgment insofar as that judgment concerned replacements for Ford fabrics. This Court today, in affirming the Court of Appeals’ judgment, says:
“Our decision dealt, however, only with the General Motors and not with the Ford cars.” Ante, p. 479.
The Court’s statement of what we did is, I think, completely refuted by the record in this case.
The opinion of the Court was delivered by Mr. Justice Whittaker. That opinion was joined by The Chief Justice, Mr. Justice Black, Mr. Justice Douglas, and Mr. Justice Clark. The grounds for the Court’s opinion, as I shall point out, applied alike to the repair of Ford cars which had originally been sold by the manufacturer without a license from Convertible, and to General Motors cars that had been sold with such a license. Mr. Justice Brennan, however, dissented from the grounds of the Court’s opinion although he concurred in the judgment of reversal “except, however, as to the relief granted respondent in respect of the replacements made on Ford cars before July 21, 1955.” 365 U. S., at 368. Mr. Justice Harlan, joined by Justices Frankfurter and Stewart, dissented from the Court’s opinion and from its judgment in its entirety. 365 U. S., at 369. His grounds for dissenting from the Court’s opinion were substantially the same as those of Mr. Justice Brennan.[2] *650 The difference between Mr. Justice Harlan's dissent and Mr. Justice Brennan's opinion concurring in the Court’s judgment “except ... as to the relief granted . . . in respect of the replacements made on Ford cars” was a very minor one: both agreed, contrary to what the Court decided, that a person could be held liable for contributory infringement of a combination patent, even though he furnished a replacement for only a part of the combination, if the part replaced was important enough for the substitution to amount to “reconstruction” rather than merely “repair” of the device; Mr. Justice Brennan, however, believed that the question whether there had been a “reconstruction” was for this Court to decide as a matter of law and that there had not been a “reconstruction” here, while Mr. Justice Harlan said that the trial court’s findings that there had been a “reconstruction” were decisive.
The difference in the approach of Justices Harlan and Brennan from that of Mr. Justice Whittaker, writing for the Court, is responsible, as I read the record, for the fact that while the Court reversed the former judgment in its entirety, Mr. Justice Brennan was willing to reverse it only as to replacement fabrics sold for General Motors cars. Mr. Justice Brennan believed that since the licensed General Motors cars as built did not directly infringe the patent and Aro contributed to what did not amount to a “reconstruction” of them, Aro as to them was not a contributory infringer; the Ford cars, however, were built by the manufacturer without a license from Convertible, so Ford and the purchasers who used its cars were allegedly direct infringers, and since Aro helped Ford owners continue to use infringing tops it was a contributory infringer even though the replacement covers did not “reconstruct” the tops. The Court, however, in Mr. Justice Whittaker’s opinion, rejected completely the • notion that there could ever be within the meaning of *651 § 271 (c) any contributory infringement — whether based on a finding of “reconstruction” or on some other theory— in a case like this one, where the patent was merely a combination patent and the party which was sued for infringement had sold replacements for only a part of the combination. The Court’s opinion relied on the fact that the fabric Aro used was not itself patented, that Convertible had made no claim to invention based on the fabric or its shape, pattern or design, and that a combination patent gave its owner a monopoly on nothing but the combination as a whole, since, Mr. Justice Whit-taker said, “if anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant.” 365 IT. S., at 344. The effect of the Court’s holding was that since the top fabric was not itself patented, Convertible could not extend its monopoly privileges regarding the combination as a whole to the unpatented fabric cover part of the top. Obviously, this holding of the Court and the reasons Mr. Justice Whittaker gave for it did not depend on whether the fabric wa$ used on a Ford or on a General Motors car.
Mr. Justice Whittaker and the four members of the Court who joined him were, of course, familiar with the alleged distinction which Convertible tried to draw between its rights with reference to the General Motors licensed cars on the one hand and the Ford unlicensed cars on the other. The district judge in his opinion drew the distinction,[3] Convertible’s brief in this Court drew the distinction,[4] and MR. Justice Brennan drew the *652 distinction in his opinion by concurring in the Court’s judgment with respect to replacement fabrics for General Motors cars but dissenting with respect to those for Ford cars. It is apparent, therefore, that to the majority who joined in Mr. Justice Whittaker’s opinion the asserted distinction was simply irrelevant, since Convertible as the holder of a combination patent could under no circumstances prevent others from making and supplying unpat-ented and unpatentable replacement parts for any element of the combination. The Court’s opinion by Mr. Justice Whittaker made it crystal-clear that the Court was holding that with respect to combination patents like the one here,
“No element, not itself separately patented, that constitutes one of the elements of a combination patent is entitled to patent monopoly, however essential it may be to the patented combination and no matter how costly or difficult replacement may be.” 365 U. S., at 345.
Finally, the Court did not conclude its opinion with the words “reversed in part and affirmed in part,” as it would have done if like Mr. Justice Brennan it had accepted Convertible’s asserted distinction. The order in the opinion by Mr. Justice Whittaker was simply, “Reversed,” which meant “Reversed,” not “reversed in part and affirmed in part.”
If all this could have left any doubt that the Court reversed the judgment of the Court of Appeals in its entirety rather than in part only, that doubt would certainly have been removed by the action taken on Convertible’s petition for rehearing or alternative motion for amendment or clarification of the Court’s judgment. This motion specifically pointed out the alleged distinction between Convertible’s rights with respect to Aro’s replace *653 ment fabrics for the two kinds of cars. The Court denied the motion and the petition for rehearing, 365 U. S. 890, and in so doing rejected precisely the same argument[5] which today’s Court is now' accepting. Since the motion and petition for rehearing were rejected, five Justices must have found Convertible’s arguments without merit. At that time, April 17, 1961, Mr. Justice Whittaker was still a member of the Court. It can be assumed that there were four votes for rehearing — those of Mr. Justice Brennan, who had not joined the Court’s judgment with reference to the fabric replacements for Ford cars, and of Mr. Justice Harlan, Mr. Justice Frankfurter, and Mr. Justice Stewart, who had dissented from the Court’s opinion in its entirety. Four votes could not grant the motion or the petition for rehearing, but five votes — those of Mr. Justice Harlan, Mr. Justice Brennan, Mr. Justice Stewart, Mr. Justice White, and Mr. Justice Goldberg — now reverse the earlier rulings of this Court. This is, of course, permissible, but there is no reason why today’s action in departing from the prior holding should also be pointed to as, in the words the Court of Appeals used to describe our previous opinion, a “puzzling question.” Compare Legal Tender Cases, 12 Wall. 457, overruling Hepburn v. Griswold, 8 Wall. 603. As to the merits of today’s departure from our prior holding, I think that the old majority was right and the new majority is wrong, for all of the reasons set out in Mr. Justice Whittaker’s opinion for the Court and in my concurring opinion, 365 U. S., at 346.
*654 II.
The Court now holds that although the fabric used on these car tops was unpatented and clearly unpatentable, the combination-patentee nevertheless is free to expand its monopoly beyond the patent’s boundaries through preventing the sales of that single element, the unpatented fabric. The new majority relies largely on 35 U. S. C. § 271 (c), as did Mr. Justice Harlan, Mr. Justice Frankfurter, Mr. Justice Stewart and Mr. Justice Brennan the first time this case was here. As I said, I am satisfied with the answers given to the new majority’s interpretation of § 271 (c) by what was said in Mr. Justice Whittaker’s opinion for the Court and in my concurrence. But since the new majority is now giving Convertible a legal monopoly over the unpatented fabric cover, I find it necessary to reach the constitutional question urged by Aro.
Article I, § 8 of the Constitution gives Congress the power to “promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.” The granting of patent monopolies under this constitutional authority represents a very minor exception to the Nation’s traditional policy of a competitive business economy, such as is safeguarded by the antitrust laws. When articles are not patentable and therefore are in the public domain, as these fabric covers were, to grant them a legally protected monopoly offends the constitutional plan of a competitive economy free from patent monopolies except where there are patentable “Discoveries.” And the grant of a patent monopoly to the fabrics can no more be justified constitutionally by calling their sale by competitors “contributory infringement” than by giving it any other label. Cf. Compco Corp. v. Day-Brite Lighting, Inc., 376 U. S. 234; Sears, Roebuck & Co. v. Stiffel Co., 376 U. S. 225.
*655 III.
The Court holds, quite properly I think, that a pat-entee can get only one recovery for one infringement, no matter how many different persons take part in the infringement. In this case Ford, allegedly a direct infringer of the Convertible patent, made a settlement with Convertible for all past infringements in making its cars and obtained a license to use the patent in the future. The Court holds that while there can be only one recovery for the alleged infringement which Ford turned loose on the trade, Convertible should nevertheless have an opportunity to try to prove, if it can, that it settled with Ford for less than the full amount of its damages. This, I think, brings about an unjust result which the patent law does not compel. Here Ford, the principal infringer, obtained a complete release from all damages for its infringement, and I would hold that innocent purchasers of Ford cars containing the infringing devices are entitled to be released just as Ford has been. There is considerable merit and fairness in the idea that completely releasing from liability one of several persons, all of whom are obligated to another, releases them all. This is particularly so in the area of patent law, where the doctrine of contributory infringement is rested on the belief that a direct infringer may sometimes be collection-proof, and that in such a situation the patentee should be given a chance to collect its damages from a more solvent company which knowingly aided the infringement. The original infringement, if there was infringement here,[6] was Ford’s. Fairness would require that if recovery can be had from the chief wrongdoer, here Ford, the first obligation of the injured person is to try to hold Ford com *656 pletely responsible. This should be particularly true in instances like this, where one company infringes a patent and sells goods which enter into the channels of trade throughout the Nation, thereby subjecting an untold number of innocent dealers, future purchasers, and even repairmen to damages. The statutory right to sue for infringement — involving treble damages, punitive damages, attorney’s fees, etc. — should not be construed in a way that permits unnecessary harassment of people who have bought their goods in the open market place. I can think of nothing much more unfair than to visit the infringement sins of a large manufacturer upon the thousands of ultimate purchasers who buy or use its goods.
IY.
For the foregoing reasons I believe that Aro should not be held liable for any damages at all and that the District Court should be ordered to dismiss the case. A majority of the Court, however, remands the case for determination of whether and to what extent Aro is liable for damages. Whether Aro is liable for any damages at all depends on whether it and the persons to whose infringement Aro is alleged to have contributed can be held liable for damages even though they may have had no knowledge that a patent covered the top or that their conduct infringed or helped to infringe that patent. I would hold that unless there was such knowledge, there can be no infringement or contributory infringement.
Section 271 (c), the section dealing with contributory infringers (which Aro is alleged to be), provides that whoever sells a component of a patented combination “constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent . . . shall be liable as *657 a contributory infringer.” [7] Usually the word “knowing” means “knowing,” and I am unwilling to say that in § 271 (c) it means “unknowing.” This statute to me means rather plainly that in order to violate it, one who sells an article must know that the article is to be used “in an infringement of such patent” and that it is “especially made or especially adapted” for that purpose. Furthermore, the legislative history of the statute confirms this interpretation.
As originally drafted § 271 (c) provided:
“Whoever knowingly sells a component of a patented . . . combination . . . , especially made or especially adapted for use in an infringement of such patent . . . shall be liable as a contributory infringer.” [8]
Several times the House Committee considering the bill was told that because of the position of the word “knowingly” in the section it was not clear exactly how much a person had to be shown to have known before he could be held liable as a contributory infringer.[9] Some witnesses expressed fear that the section might be construed to mean that a person could be held liable for selling an article even though he did not know that it was adapted for use in a patented device and that it would be used in an infringement.[10] On the other hand, advocates of a *658 broad liability for contributory infringement said that there should be required only knowledge that an article was to be used in a particular device — that a person would be liable as a contributory infringer even if he did not know of the existence of any patent and of any likely infringement.[11] After hearing both sides the House Committee changed the language of the bill to read, as §271 (c) now provides:
“Whoever sells a component of a patented . . . combination . . . , knowing the same to be especially *659 made or especially adapted for use in an infringement of such patent . . . shall be liable as a contributory infringer.” [12]
Both the House and Senate reports explained that
“This latter paragraph is much more restricted than many proponents of contributory infringement believe should be the case. The sale of a component of a patented machine, etc., must constitute a material part of the invention and must be known to be especially made or especially adapted for use in the infringement before there can be contributory infringement . . . .”[13]
The House Committee thus attempted to make clear that innocent persons, who acted without any knowledge that the goods they sold were adapted for use in the infringement of a patent which they knew about, could not be held liable as contributory infringers. It is hard to believe that Congress intended to hold persons liable for acts which they had no reason to suspect were unlawful, and as I have pointed out the legislative history shows Congress did not. Therefore I am wholly unwilling to construe the section as meaning that one who sells an unpatented and unpatentable piece of fabric to be used to repair an automobile top can be held liable for treble damages as a contributory infringer even though he had absolutely no knowledge that there was a patent on the top and that the top had been sold without a license, and could not, because of this lack of knowledge, have sold the top “knowing the same to be especially made or especially adapted for use in an infringement of such patent.”
Furthermore, to justify its result the Court today in defining “contributory infringement” expands the cover *660 age of § 271 (a), which deals with “direct infringement,” so as to make every consumer or repairman who innocently buys or repairs an unmarked article which infringes a patent liable for damages as a direct infringer. In order for there to be contributory infringement, the Court admits, there must be a direct infringement which the alleged contributory infringer has aided. Here Ford was a direct infringer, but Aro sold nothing to Ford. And so, in order to find a direct infringer who used Aro fabrics, and thereby justify its result, the Court says that any individual who buys a product such as an automobile from an infringing manufacturer and devotes it to his personal use is without more liable as a direct infringer of the patent under § 271 (a) — even though he did not know that the manufacturer of the product had infringed some patent, indeed, even though he perhaps did not know what a patent is.
The Court’s interpretation of § 271 (a) concerning the lack of necessity for knowledge before a person can be mulcted in damages for direct infringement is strangely inconsistent with another provision of the patent code, 35 U. S. C. § 287,[14] which states in unequivocal, easily understood language that “no damages shall be recovered by the patentee in any action for infringement, except *661 on proof that the infringer was notified of the infringement and continued to infringe thereafter.” Yet the Court here is holding, with no support in any judicial precedent[15] and certainly none in common sense or justice, that innocent consumers of patented products and those who equally innocently do no more than repair worn-out parts can be subjected to punitive or treble damages even though they neither knew nor suspected that any patent forbade them to buy, use or repair those products. It would be one thing to require those who sell new inventions for profit to check the records of the Patent Office. It is quite another to hold, as the Court now does, that every housewife, plumber, and auto repairman must do so.
The tremendous burden that the Court’s construction of the patent laws will put on innocent bona fide dealers in or purchasers of unpatented products (if Congress does not change the Court’s ruling) cannot be accurately predicted. The number of patented appliances of various kinds in automobiles is certainly not small. Just a few of those that have appeared in litigation in the courts are *662 windshield sun visors, wheel attachments, drive-shaft bushing assemblies, automobile heaters and windshield defrosters, steering stabilizers, shock absorbers, pistons, steering gear checks, steering wheels, radiator shields, clutch release thrust bearings, mountings for rear-view mirrors, vacuum-operated gear-shift mechanisms, spark plug and coil connectors, wire springs for upholstered seat structures, steering gear idler arms, windshield wiper blade assemblies, and others.[16] After the Court’s opinion in this case it will certainly behoove purchasers of new or second-hand cars and repair shops which mend those cars to hire experts, if they can find them, in order to try to ascertain whether or not any car which they have bought (maybe on credit from a second-hand dealer) or are asked to repair is a booby trap waiting to subject them to suits for infringement by reason of some one of the car’s patented appliances, the name or existence of which the owner of the car may not even suspect. And automobiles are of course not the only equipment in which ordinary purchasers use patented devices. Purchasers of homes equipped with modern appliances, as well as millions of buyers of consumer goods in general, may soon be made unhappily aware of the broad scope of patent monopolies as interpreted by this Court. Entrepreneurs in the new corporate business of suing for infringements (Aro claimed that Convertible was such a corporation, set up with no other function) may soon become as common as patents themselves.
Neither the language nor the purpose of the patent laws requires that they be construed to bring about such threats on so wide a scale to the free functioning of our business economy and to purchasers of patented appliances who are wholly innocent of any intention to infringe patents. I do not believe that in construing the patent *663 laws we should attribute to Congress the purpose of bringing about such unreasonable, absurd and wholly unjust results. Cf. United States v. American Trucking Assns., Inc., 310 U. S. 534, 542-544; Church of the Holy Trinity v. United States, 143 U. S. 457, 459. I cannot believe that Congress intended to subject to damages thousands of ultimate consumers who do not know and have no reason to suspect that lawsuits are lurking in every patented contrivance concealed somewhere within the hidden recesses of their automobiles.
I would reverse the judgment of the Court of Appeals and send the case back to the District Court with instructions to dismiss it.

 “Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.” 66 Stat. 811, 35 U. S. C. §271 (c).

 Mr. Justice Brennan's opinion said:
“My Brother Harlan's dissent cogently states the reasons why I also think that is too narrow a standard of what constitutes impermissible ‘reconstruction.’ ” 365 U. S., at 362.

 119 U. S. P. Q., at 124.

 One of Convertible’s argument headings read, “The Proposed Rules of Law Propounded By Aro and the Government Cannot, Under the Facts of This Case, Extend to Ford Cars.” Brief for Respondent, Aro Mfg. Co. v. Convertible Top Replacement Co., No. 21, 1960 Term, p. 73. The argument extended over the next several pages. Id., pp. 73-76.

 Respondent’s Petition for a Limited Rehearing: or, in the Alternative, Motion for Amendment or Clarification of the Court’s Opinion, Aro Mfg. Co. v. Convertible Top Replacement Co., No. 21, 1960 Term, pp. 1-13. That the replacements for Ford cars should be treated differently from those for General Motors cars was the only argument made in the petition and motion.

 For discussion of the doubtful validity of this combination patent, see my concurring opinion in the former decision of this case, 365 U. S., at 350-352.

 (Emphasis supplied.)

 § 231 (e), H. R. 3760, 82d Cong., 1st Sess. (Emphasis supplied.)

 See, e. g., Hearings before Subcommittee No. 3, Committee on the Judiciary, on H. R. 3760, 82d Cong., 1st Sess., Ser. No. 9, p. 215.

 The chief engineer and chairman of the board of a company which manufactures instruments to customers’ specifications testified: “We make a large number of devices and people come to us in the industry from distant points. . . . When you realize that there are some 600,000 patents and millions of claims involved under the present status of this bill, . . . and we become liable as contributory *658 infringers, you can see it would be impossible for us to know in all cases whether we infringed or not. . . .
“ ‘Knowingly sells’ will thus become highly controversial, and it will be construed by various patent lawyers to meet their particular situation.” Id., at 141-142.
When a witness from the Antitrust Division of the Justice Department raised the same objection, the following exchange took place:
“[Congressman] Bryson. It seems to me that if he sells it at all he knows he sells it.
“Mr. Fugate [of the Justice Department]. He knows he sells it; but, as in this case that I mentioned, the cutter of the metal plate according to a special pattern didn’t know that that was to be used in an infringing manner, that it was to be used in a patented combination.
“[Congressman] Rogers. Inasmuch as you recognize that the law still gives a cause of action against the contributor who helps infringe, would there be any objection on the part of the Justice Department to clarify that law in definite words so that there would not be the confusion that the gentlemen have testified to?” Id., at 164r-165.

 Mr. Giles S. Rich of the National Council of Patent Law Associations stated:
“ ‘[K]nowingly sells a component of a patented machine’ means to us that you know that the component is going into that machine. You don’t have to know that it is patented. You don’t have to know the number of the patent, and you don’t have to know that the machine that it is going into constitutes an infringement. You just know its ultimate destination.” Id., at 175.

 (Emphasis supplied.)

 H. R. Rep. No. 1923, 82d Cong., 2d Sess., p. 9; S. Rep. No. 1979, 82d Cong., 2d Sess., p. 8.

 “Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word 'patent’ or the abbreviation 'pat.’, together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.” 66 Stat. 813, 35 Ü. S. C. § 287.

 The cases which the Court cites as contrary to this view neither considered nor decided the issue whether innocent persons entirely unaware that their conduct would either infringe or contribute to the infringement of a patent can be held liable as direct or contributory infringers. Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co., 297 U. S. 387, held that a primary infringer, like Ford here, which ordered manufactured for itself and which sold for profit a patented door-latch could not escape liability for infringement simply because a statutory notice of the patent was not marked on the infringing latches. The Court pointed out that the patentee had never had an opportunity to attach a notice because the in-fringer was producing the latches without the patentee’s knowledge. The situation in the case before us, involving an asserted liability of consumers of unmarked goods, rather than a seller of those goods for profit, does not even remotely resemble that in Wine. In none of the other cases relied on was § 287 interpreted or even considered by the Court.

 See 35 U. S. C. A. § 271, n. 139.